# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBBI HUFF,

<em>Plaintiff,</em>

v.

CHELTENHAM TOWNSHIP, <em>et al.</em>,

<em>Defendants.</em>

CIVIL ACTION
NO. 14-05555

## MEMORANDUM

PAPPERT, J.                                                                    July 1, 2015

This case has its origins in the tumultuous relationship between Plaintiff Robbi Huff

("Huff") and her former boyfriend Philip Porter ("Porter"). After a nighttime argument in the

street turned physical and Huff was allegedly knocked unconscious, Huff called 911 to report the

assault. Cheltenham Township Police Officer Stewart Coyle ("Coyle") and Sergeant Richard

Schaffer ("Schaffer') responded to the scene and ultimately arrested both Huff and Porter for

disorderly conduct. Huff brought this action against Coyle, Schaffer and Cheltenham Township

(collectively "Defendants"), alleging false arrest under 42 U.S.C. § 1983 and state law claims for

false arrest, malicious prosecution, and intentional infliction of emotional distress.[1] Defendants

moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants'

motion is granted for the reasons that follow.

---

[1] In her opposition to Defendants' motion for summary judgment and at oral argument, Huff agreed to the dismissal of all claims against Cheltenham Township, as well as her state law claims for false arrest and intentional infliction of emotional distress against all Defendants. (*See* Pl.'s Opp'n to Mot. Summ. J. 1, ECF No. 19; Hr'g Tr. 5:22-6:6 June 26, 2015.) Huff indicated that she intends to proceed only with her false arrest claim under the Fourth Amendment and her malicious prosecution claim under state law. (Pl.'s Opp'n to Mot. Summ. J. 1, 8, 13; Hr'g Tr. 6:7-19.) Accordingly, all claims against Cheltenham Township are dismissed, as are Huff's state law claims for false arrest and intentional infliction of emotional distress against Coyle and Schaffer.

# I.

The issues before the Court result from the physical altercation that took place between Huff and Porter on September 27, 2012.[2] (Defs.' Stmt. of Facts ¶¶ 1-2, ECF No. 18; Pl.'s Stmt. of Facts ¶¶ 1-2, ECF No. 20.) At the time of the incident, Huff was employed as a Philadelphia Police Officer. (Defs.' Stmt. of Facts ¶ 4; Pl.'s Stmt. of Facts ¶ 4.) After finishing work on the night in question, Huff visited Porter at his residence at 1017 Arboretum Road in Wyncote, Pennsylvania. (Defs.' Stmt. of Facts ¶¶ 1-2; Pl.'s Stmt. of Facts ¶¶ 1-2; Huff Dep. 14:24-15:16, Mar. 3, 2015.) Huff and Porter, who have a daughter together, were sitting in Huff's car outside Porter's residence around 3:00 a.m. when they began to argue. (Defs.' Stmt. of Facts ¶¶ 1-2; Pl.'s Stmt. of Facts ¶¶ 1-2; Huff Dep. 9:21-23.) Upon exchanging cell phones with Porter, Huff stepped out of the car to review messages on Porter's phone.[3] (Defs.' Stmt. of Facts ¶¶ 6-7; Pl.'s

---

[2]     In accordance with Federal Rule of Civil Procedure 56, the Court draws the facts from the parties' respective statements of material undisputed facts and deposition testimony, viewing the facts in the light most favorable to Huff and drawing all inferences in her favor. *See* Fed. R. Civ. P. 56; *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009).

[3]     The Court recognizes Huff's argument that Porter's cell phone was technically her property because she gave Porter the money to purchase the phone and paid the bills on the phone. (Pl.'s Opp'n to Mot. Summ. J. 10.) However, Porter's possession and personal use of the phone on the night in question is undisputed. Huff's deposition testimony makes this clear:

> So after he went through my phone, I said to [Porter] – I said, "You're playing detective. Let me see **your** phone."
>
> So he had to unlock **his** phone so I can go through **his** phone, so as I was going through **his** phone, I'm sitting in my driver's seat, he's sitting in the passenger's seat, and he's right over my shoulder. He's, like, invading my space. . . .

(Huff Dep. 27:14-28:1, Mar. 3, 2015 (emphases added).) Huff further testified that she threw the phone to the ground because she was upset by messages she read on it, and that she admitted to police that she had broken "the phone." (*Id*. at 28:2-19, 44:8-9.)

Coyle and Schaffer also testified that Porter had represented to them at the scene that the phone was his. (*See* Coyle Dep. 17:16-19, Mar. 17, 2015 ("[Porter] told me that Ms. Huff was going through his phone, had apparently seen something that she didn't agree with . . ."); Schaffer Dep. 35:15-17, Mar. 4, 2015 ("I tried to establish ownership of the phone and car, [Porter] stated both of those items were his.").) Crucially, Huff admits that she never told the police on September 27, 2012 that she gave Porter the money to purchase the phone or paid the bills on the phone. (*See* Hr'g Tr. 31:16-32:2, 42:20-24.) In fact, there is no evidence in the record that Huff ever

Stmt. of Facts ¶¶ 6-7.)  After reading one chain of messages in particular, which Huff described as "negative conversations" about her, Huff threw Porter's phone in the street and it shattered. (Defs.' Stmt. of Facts ¶¶ 8-9; Pl.'s Stmt. of Facts ¶¶ 8-9; Huff Dep. 28:2-24.)  Porter retaliated by hitting Huff in the face.  (Defs.' Stmt. of Facts ¶ 10; Pl.'s Stmt. of Facts ¶ 10.)  Huff testified that Porter hit her two more times, the third time temporarily knocking her unconscious.  (Huff Dep. 31:20-34:5.)  Once Huff regained consciousness, Porter ran inside the house.  (*Id*. at 34:19-23.)

Huff called 911 to report the assault.  (Defs.' Stmt. of Facts ¶ 3; Pl.'s Stmt. of Facts ¶ 3; Huff Dep. 34:19-35:9.)  As police approached the scene, Porter emerged from his house.  (Huff Dep. 37:6-10.)  Coyle and another officer, later identified as Officer Ryan Ewald ("Ewald"), were the first officers to respond.  (Defs.' Stmt. of Facts ¶ 11; Pl.'s Stmt. of Facts ¶ 11; Huff Dep. 39:21-23, 42:15-23; Ewald Aff. ¶ 2.)  Although Coyle claims he never met Huff before, Huff testified that she had prior interactions with Coyle from various times she called the police on Porter related to child custody disputes over their daughter.  (Huff Dep. 40:41:2; Coyle Dep. 10:9-11, Mar. 17, 2015.)  The parties do not dispute that, when police arrived on the scene, Huff and Porter were standing together calmly in front of 1017 Arboretum Road.  (Huff Dep. 43:17-44:3; Coyle Dep. 10:21-12:12.)  Huff informed Coyle that she had broken Porter's phone, that Porter struck her multiple times and she fell to the ground.  (Defs.' Stmt. of Facts ¶ 12; Pl.'s Stmt. of Facts ¶ 12.)

At this point the parties' versions of events begin to differ markedly.  Huff testified that she told Coyle Porter had knocked her unconscious and she wanted Porter arrested.  (Huff Dep. 44:13-17.)  Coyle refused to arrest Porter.  (*Id*. at 44:19-45:3.)  Coyle told Huff "[y]ou guys go through this all the time" and that if he arrested Porter, he would also have to arrest Huff.  (*Id*. at

---

in any way indicated to the police that the phone was hers or even that it was not Porter's phone.  The Court will therefore refer to the cell phone as "Porter's phone."

45:7-12; *see also* Pl.'s Stmt. of Facts ¶ 13.)  Coyle made this declaration despite Porter telling the police, "I don't want anything done to her.  She didn't do anything."  (Huff Dep. 51:17-23.) Huff testified that she then requested Coyle call his supervisor, and Sergeant Schaffer responded to the scene.  (*Id*. at 45:16-22, 52:3-5.)

In contrast, Coyle testified that after hearing Huff's story, he spoke separately with Porter who stated that Huff assaulted him.  (Coyle Dep. 14:5-17:19.)  Porter told Coyle that Huff "was going through his phone, had apparently seen something she didn't agree with and punched him in the face."  (*Id*. at 17:13-19.)  Porter showed Coyle his injuries—a cut on the inside of his bottom lip.  (*Id*. at 18:10-15.)  Porter further explained that, after retrieving his phone from the street, he was walking to go inside his house when Huff "grabbed him by the back of the shirt, by the collar to stop him."  (*Id*. at 18:19-19:2.)  Porter claimed to have swung his "elbow around to break her hold" and "incidentally struck her while swinging his elbow."  (*Id*.)  Porter then watched as Huff "proceeded over to key his car."  (*Id*. at 19:3-8.)  Coyle returned to Huff and told her what Porter had said.  (*Id*. at 19:12-19.)  Coyle explained that "both parties had visible injuries" and that "we would have to arrest both of them" or "they could part ways for the evening."  (*Id*. at 21:10-14.)  Huff then became "agitated" and yelled, "Then lock me the fuck up."  (*Id*. at 23:4-12.)  Coyle did not observe any neighbors come outside or turn their lights on as a result of Huff's yelling.  (*Id*. at 23:13-24:4.)  Coyle called for his street supervisor and Sergeant Schaffer responded to the scene.  (*Id*. at 24:11-27:11.)

Schaffer provides a third version of events.  Schaffer stated that during his drive to the scene, he remembered that Porter and Huff had a history of child custody issues.  (Schaffer Dep. 28:22-29:14, Mar. 4, 2015.)  Schaffer testified that he observed only Coyle, Ewald, Huff and Porter standing silently outside when he arrived.  (*Id*. at 13:14-15:3.)  Schaffer recalled speaking

with Huff first and being told that Porter hit her twice, although he does not remember her stating that she had been knocked unconscious.  (*Id*. at 20:15-21:16.)  Schaffer observed injuries to Huff's mouth and remembers Huff telling him that the left side of her face hurt.  (*Id*. at 22:2-23:9.)  Schaffer testified that Huff was "very adamant" about having Porter arrested, but did not seem "totally forthcoming" with facts and information regarding what led up to the fight.  (*Id*. at 23:14-25:22.)

Schaffer then spoke with Porter.  Schaffer stated that Porter was "[i]nitially as evasive as Ms. Huff" and said that "nothing was going on, that he had had an argument, and didn't seem to want to go any further."  (Schaffer Dep. 30:8-21.)  However, after "some prodding" Porter stated that the argument had escalated and become physical.  (*Id*. at 31:5-9.)  Porter explained substantially the same story he told Coyle—that he was attempting to go inside with his broken phone when Huff grabbed him by the collar to stop him and hit him in the mouth.  (*Id*. at 31:20-32:11.)  Porter's arm made "incidental contact" with Huff's face while he was trying to get away.  (*Id*. at 33:19-34:7.)  Porter also told Schaffer that Huff had damaged his car parked in the driveway.  (*Id*. at 34:17-22.)  Schaffer observed that the car was scratched with what appeared to have been a key.[4]  (*Id*. at 38:22-39:9.)

Schaffer then returned to Huff.  After telling her Porter's account of the fight, Huff became "more heated" and "adamant that that was not the correct version of events."  (Schaffer Dep. 38:14-40:2.)  Huff raised her voice, saying "Lock him the fuck up" and "This is all bullshit."  (*Id*. at 40:3-24.)  Huff tried "to press her version of events that she had been assaulted

---

[4]     The parties dispute whether Huff keyed Porter's car.  Defendants claim that Porter told police that Huff had keyed his car and that police observed there was fresh damage to the car.  (Defs.' Stmt. of Facts ¶¶ 37, 44-45.)  On the other hand, Huff denies doing any damage to Porter's car and points to prior incident reports dated July 2012 and August 2012 that reflect that Porter had previously reported to Cheltenham police that someone keyed his car in the months leading up to the September 2012 altercation between Huff and Porter.  (*See* Pl.'s Stmt. of Facts ¶¶ 37, 45, Ex. A.)  Huff also disputes that the damage police observed was fresh.  (*Id*. at ¶ 45.)

by Porter and not vice versa." (*Id.* at 41:1-6.) Schaffer did not notice that any neighbors were

disturbed, but he attempted to calm the situation and told Huff that there was enough evidence

for both her and Porter to be arrested. (*Id.* at 41:7-22, 43:9-45:3.) He offered that Huff and

Porter "could both part ways for the evening, that they could sleep on this." (*Id.* at 45:4-10.)

Huff, however, continued "pressing the issue," and Porter stated that if that was the case, he

wanted to press charges too. (*Id.* at 46:5-22.) Huff responded, "Well, then go ahead and lock me

the fuck up." (*Id.* at 46:23-47:3.) Schaffer consequently directed Coyle to arrest both Huff and

Porter. (*Id.* 47:4-7.)

While Huff admitted to throwing Porter's phone, she denies that she ever demanded to be

arrested and does not recall telling Coyle or Porter to "lock me the fuck up." (Pl.'s Stmt. of Facts

¶¶ 9, 19, 23, 30; Hr'g Tr. 29:19-30:1 June 26, 2015.) Huff also denies seeing Porter have

injuries on the night in question and maintains that she told the police she did not know how

Porter could have sustained any injuries. (Pl.'s Stmt. of Facts ¶¶ 17, 29, 40; Huff Dep. 54:5-9,

55:10-17; Hr'g Tr. 36:2-7.)

Huff and Porter were arrested and charged with disorderly conduct in violation of 18 Pa.

C.S.A. § 5503(a)(4).[5] (Defs.' Stmt. of Facts, Ex. G.) The charges against Huff were eventually

dismissed by a magistrate judge, although the parties disagree as to why.[6] Huff claims that the

charge against her was dismissed because Coyle failed to make out a *prima facie* case at the

---

[5]    While in custody, the police took pictures of Huff and Porter to document their injuries, as well as pictures
of the damage to Porter's phone and car. Those pictures are in evidence. (*See* Defs.' Stmt. of Facts, Ex. E.)

[6]    Huff's criminal record reflects that the disorderly conduct charge was dismissed after a summary trial
before Magistrate District Judge Christopher J. Cerski. No further detail is given. *See Commonwealth v. Huff*, No.
MJ-38103-NT-0000438-2012, Non-Traffic Docket at 1, *available at* https://ujsportal.pacourts.us/DocketSheets/
MDJReport.ashx?docketNumber=MJ-38103-NT-0000438-2012 (last visited June 23, 2015). The Court may take
judicial notice of this document as it is part of the public record. *See Pension Ben. Guar. Corp. v. White Consol.
Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) ("Courts have defined a public record, for purposes of what
properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or
mistrials").

hearing.  (Pl.'s Stmt. of Facts ¶ 31.)  Conversely, Defendants contend that the case was dismissed because Coyle told the magistrate at the hearing that, since Huff and Porter had reconciled and sought counseling, he did not wish to pursue the charges and jeopardize their employment.  (Defs.' Stmt. of Facts ¶ 31; *see also* Coyle Dep. 40:3-41:13.)

Huff filed this lawsuit on September 26, 2014.  (ECF No. 1.)  She presently brings claims for false arrest under 42 U.S.C. § 1983 (Count I) and malicious prosecution under state law (Count II) against both Coyle and Schaffer.[7]  (Hr'g Tr. 6:7-19.)  Defendants filed a motion for summary judgment arguing that, at the very least, police had probable cause to arrest Huff for criminal mischief since she admitted to breaking Porter's phone; therefore, Huff's claims for false arrest and malicious prosecution fail as a matter of law.  (Defs.' Mot. Summ. J. 4, ECF No. 17.)  Defendants further maintained that the federal claims against them are barred because they are entitled to qualified immunity.  (*Id*. at 10.)  Huff countered that the police did not have probable cause to arrest her for criminal mischief because the statute requires that the perpetrator tamper with the tangible property "of another," and she both purchased and paid the bills for Porter's cell phone.  (Pl.'s Opp'n to Mot. Summ. J. 10, ECF No. 19.)  Huff further contends that criminal mischief is a summary offense and, in Pennsylvania, a police officer does not have the authority to arrest someone for a summary offense without a warrant unless the offense was committed in the officer's presence.  (*Id*.)  The Court held oral argument on Defendants' motion on June 26, 2015.  (ECF No. 27.)

## II.

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to

---

[7] Huff has dismissed the remaining claims against the Defendants.  *See* note 1, *supra*.

judgment as a matter of law." *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the nonmoving party will not suffice; there must be evidence by which a jury could reasonably find for the nonmoving party. *Id.* at 252.

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III.

A prima facie case under § 1983 requires Huff to demonstrate that: (1) Defendants deprived her of a federal right; and (2) Defendants were acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Here Huff alleges that Defendants deprived her of her Fourth Amendment right to be free from illegal arrest. (Compl. ¶ 23.)

The Fourth Amendment prohibits arrests without probable cause. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). Probable cause requires more than mere suspicion, but does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Reedy v. Evanson,* 615 F.3d 197, 211 (3d Cir. 2010) (quoting *Adams v. Williams,* 407 U.S. 143, 149 (1972)); *see also Henry v. United States,* 361 U.S. 98, 102 (1959) (stating that evidence that may prove insufficient to establish guilt at trial

may still be sufficient to find the arrest occurred within the bounds of the law).  The test for an arrest without probable cause is an objective one, based on "the facts available to the officers at the moment of arrest."  *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir. 1994) (quoting *Beck v. Ohio,* 379 U.S. 89, 96 (1964)).  "In assessing the presence of probable cause, a court must determine the fact pattern the officer encountered and, in light of that, whether the arresting officer had probable cause to believe that a criminal offense has been or is being committed." *Snell v. City of York,* 564 F.3d 659, 671 (3d Cir. 2009) (quoting *Sharrar v. Felsing,* 128 F.3d 810, 818 (3d Cir. 1997)) (internal quotation marks omitted).  Courts apply a common sense approach based on the totality of the circumstances.  *Paff v. Kaltenbach,* 204 F.3d 425, 436 (3d Cir. 2000).  "It is irrelevant to the probable cause analysis what crime a suspect is eventually charged with."  *Wright v. City of Philadelphia,* 409 F.3d 595, 602 (3d Cir. 2005) (citing *Barna,* 42 F.3d at 819).  Probable cause need only exist as to any offense that could be charged under the circumstances.  *Barna,* 42 F.3d at 819 (citing *Edwards v. City of Philadelphia,* 860 F.2d 568, 575-576 (3d Cir. 1988)).

In a § 1983 action, the issue of whether there was probable cause to make an arrest is usually a question for the jury, but "where no genuine issues as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate."  *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 192 (3d Cir. 1984).  "The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest."  *Sharrar,* 128 F.3d at 818.

As a threshold matter, there are material facts in dispute that preclude a finding at this stage that Coyle and Schaffer had probable cause to arrest Huff for disorderly conduct in violation of 18 Pa. C.S.A. § 5503 or domestic violence in violation of 18 Pa. C.S.A. § 2711.  The

photographic evidence of Porter's alleged injuries show only a small abrasion on the inside of Porter's lower lip.  (Defs.' Stmt. of Facts, Ex. E.)  Aside from these photographs, the only evidence of Porter's injuries comes from the contested deposition testimony of the parties.  (*See, e.g.*, Hr'g Tr. 36:4-7 (Huff's counsel stating that Huff "den[ies] that there was evidence of injury to both herself and Mr. Porter").)  Huff maintains that she did not hit Porter, that she did not observe any injuries to Porter on the night in question, and that Porter told the police at the scene that Huff did not do anything wrong.  (*See* Pl.'s Stmt. of Facts ¶¶ 17, 26-27, 29, 34-37, 40-42; Huff Dep. 54:5-9.)  Huff also does not admit to using profane language when speaking to Coyle and Schaffer.  (*See* Pl.'s Stmt. of Facts ¶¶ 19, 30, 38-39.)  Huff's testimony on these points directly contradicts the testimony of both Coyle and Schaffer.  (*See* Defs.' Stmt. of Facts ¶¶ 17, 19, 26-27, 29-30, 34-42.)  Whether Coyle and Schaffer had probable cause to arrest Huff for disorderly conduct or domestic violence turns on the determination of these disputed facts.

The crimes of disorderly conduct and domestic violence both contain elements requiring the police officers to reasonably believe that Huff was an aggressor on the night in question.[8]

---

[8]     The Pennsylvania disorderly conduct statute codified provides:

> **(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (1)  engages in fighting or threatening, or in violent or tumultuous behavior;
>
> (2)  makes unreasonable noise;
>
> (3)  uses obscene language, or makes an obscene gesture; or
>
> (4)  creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa. C.S.A. § 5503 (emphasis in original).  And Pennsylvania's domestic violence statute states in pertinent part:

> **(a) General rule.--**A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section 2504 (relating to involuntary manslaughter), 2701 (relating to simple assault), 2702(a)(3), (4) and (5) (relating to aggravated assault), 2705

For example, to be charged under §§ 2711(a) or 5503(a)(4), police would need probable cause to believe that Huff assaulted Porter or created a hazardous or physically offensive condition.[9] *See* 18 Pa. C.S.A. §§ 2711(a), 5503(a). Given the less than clear photographic evidence of Porter's injuries, Huff's testimony that she was not the aggressor but the victim, that she told Coyle and Schaffer this, and that Porter agreed at the scene (at least initially) that Huff had done nothing wrong, a reasonable jury could determine that Coyle and Schaffer did not have probable cause to arrest Huff for either crime.[10] *See, e.g.*, *Victory Outreach Ctr. v. Melso*, 313 F. Supp. 2d 481,

---

> (relating to recklessly endangering another person), 2706 (relating to terroristic threats) or 2709.1 (relating to stalking) against a family or household member although the offense did not take place in the presence of the police officer. A police officer may not arrest a person pursuant to this section without first observing recent physical injury to the victim or other corroborative evidence.

18 Pa. C.S.A. § 2711(a) (emphasis in original). Former sexual or intimate partners or persons who share biological parenthood qualify as "family or household members" under the statute. *See* 23 Pa. C.S.A. § 6102.

[9] A hazardous condition has been defined as "a significant risk or danger of injury to anyone." *Commonwealth v. Williams*, 574 A.2d 1161, 1164 (Pa. Super. Ct. 1990). This risk or danger has to be to a natural person; minor acts of vandalism, like keying a car, have been held not to be "hazardous conditions." *Id.* Likewise, a "physically offensive condition" has been defined as "direct assaults on the physical senses of members of the public." *Id.* Examples of such physically offensive conditions include a defendant who sets off a "stink bomb," strews rotting garbage in public places, shines blinding lights in the eyes of others, or confronts another while that person is seated in a bathroom stall "performing a private bodily function." *Id.*

[10] At oral argument, defense counsel admitted that the profane language Huff is alleged to have used on September 27, 2012 was not "obscene" in violation of 18 Pa. C.S.A. § 5503(a)(3). (Hr'g Tr. 21:8-14.) This admission is well taken since many courts have found that using vulgar or coarse language by itself (like Huff's alleged statements of "lock me the fuck up" and "this is bullshit") is not obscene under the statute unless the language appeals to the prurient interest, *i.e.*, is sexual in nature. *See Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617, 624 (E.D. Pa. 2011) ("Plaintiff's statement [of 'you asshole Eddystone mother-fucking cop'], although vulgar and coarse, is not obscene. In this context, it reasonably appears that Plaintiff was attempting to ridicule, offend and insult Officer Pretti but her statement did not appeal to prurient interests, that is, it is not sexual in nature."); *see also Commonwealth v. Kelly*, 758 A.2d 1284, 1288 (Pa. Super. Ct. 2000) ("Appellant's use of the 'F-word' and use of the middle finger were angry words and an angry gesture having nothing to do with sex. The words and gesture were meant to express disrespect to, and to offend, the Borough employee. . . . while the words and conduct used by Appellant were disrespectful, insulting and offensive, they were, in the circumstances of this case, not 'obscene' within the meaning of Section 5503(a)(3).").

Defendants also do not argue that Huff's statements constitute "fighting words" in violation of 18 Pa. C.S.A. § 5503(a)(1), likely because the Pennsylvania Supreme Court has found that mere profane remarks to police, without more, do not constitute fighting words. *See Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999) (holding that Hock's statement "Fuck you, asshole" to police in normal tone of voice among no bystanders did not amount to fighting words); *accord Victory Outreach Ctr. v. Melso*, 313 F. Supp. 2d 481, 491 (E.D. Pa. 2004) (stating that "'profane' words alone, unaccompanied by any evidence of violent arousal, are not 'fighting words' and are

489 (E.D. Pa. 2004) (denying summary judgment to both parties because "Officers Cullen and Parker paint[ed] a very different picture of that evening" than plaintiff and consequently there were genuine issues of material fact regarding whether the officers had probable cause to arrest plaintiff for disorderly conduct); *compare Berrios v. City of Philadelphia*, --- F. Supp. 3d ----, No. 12-cv-7245, 2015 WL 1456905, at *6 (E.D. Pa. Mar. 31, 2015) (finding, on motion for summary judgment, that defendants had probable cause to arrest plaintiff for domestic violence because both he and his boyfriend agreed at scene that plaintiff had hit boyfriend with an iron).

Viewing the facts in a light most favorable to Huff, and drawing all inferences in her favor, the Court concludes a reasonable jury could determine that Coyle and Schaffer did not have probable cause to arrest Huff for disorderly conduct or domestic violence. Many material details of what exactly happened on the night of September 27, 2012 remain in dispute. The Court, faced with a 'he said-she said' scenario, is mindful that credibility determinations are to be left to the jury. *Goodman*, 293 F.3d at 665. Thus, as a matter of law, the Court cannot conclude that Coyle and Schaffer had probable cause to arrest Huff for disorderly conduct or domestic violence.

Coyle and Schaffer argue that even if they did not have probable cause to arrest Huff for disorderly conduct or domestic violence, they certainly had probable cause to arrest Huff for criminal mischief because it is undisputed that Huff admitted that she broke Porter's phone at the scene. 18 Pa. C.S.A. § 3304(a) provides that a person is guilty of criminal mischief if he, *inter alia*:

> (2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property; [or]

> (5) intentionally damages real or personal property of another.

---

therefore protected speech."). Nevertheless, because Huff disputes making the alleged profane statements at all (Pl.'s Stmt. of Facts ¶¶ 19, 30, 38), the Court cannot grant summary judgment to Defendants on this ground.

Subsection (b) provides that criminal mischief is a summary offense unless the person "intentionally or recklessly causes pecuniary loss in excess of $500," in which case it is a misdemeanor of the third degree. 18 Pa. C.S.A. § 3304(b). Since the record contains no evidence of the amount of pecuniary loss Huff caused by throwing Porter's phone, the Court will view the facts in a light most favorable to Huff and assume that the damage did not exceed $500. Therefore, the question remains whether Coyle and Schaffer had probable cause to arrest Huff for the summary offense of criminal mischief.[11]

Huff makes two arguments for why the officers lacked probable cause. First, Huff points out that the criminal mischief statute requires that the perpetrator tamper with the tangible property "of another." 18 Pa. C.S.A. § 3304(a). Because Huff both gave Porter the money to purchase the phone and paid the bills on the phone, she argues that Porter's cell phone cannot be considered the property "of another." (Pl.'s Opp'n to Mot. Summ. J. 10.) Second, Huff contends that criminal mischief is a summary offense and, in Pennsylvania, police officers cannot arrest someone for summary offenses without a warrant unless the offense was committed in the officer's presence. (*Id.*) In support, Huff refers to Pennsylvania Rule of Criminal Procedure 502(2) and Third Circuit Model Civil Jury Instruction 4.12.2 in her opposition brief.[12] (*Id.*) When asked at oral argument, the only additional supportive authority Huff could cite was

---

[11]    At oral argument, defense counsel agreed that criminal mischief should be analyzed as a summary offense under these circumstances. (Hr'g Tr. 22:19-23:3.)

[12]    The Court finds Rule 502 and Model Instruction 4.12.2 inapplicable. Rule 502 and the language Huff quotes from the Model Instruction pertain to misdemeanors, not summary offenses. (*See* Pl.'s Opp'n to Mot. Summ. J. 10.) A footnote to the portion of the Model Instructions quoted by Huff also states that "Third Circuit caselaw has not clearly settled whether warrantless arrests for misdemeanors committed outside the officer's presence are permitted by the Fourth Amendment." *See* Third Circuit Model Civil Jury Instruction 4.12.2 at 152 n.219; *see also id.* at 159 n.233 (comparing *United States v. Myers*, 308 F.3d 251 (3d Cir. 2002) *with United States v. Laville*, 480 F.3d 187 (3d Cir. 2007)).

the Third Circuit's decision in *United States v. Myers*, 308 F.3d 251 (3d Cir. 2002).[13]  (*See* Hr'g Tr. 39:6-40:1.)

There are multiple problems with Huff's first argument.  Huff is correct that one can only be convicted of criminal mischief if they are found to have tampered or damaged the property "of another."  18 Pa. C.S.A. § 3304(a)(2) & (5).  However, Huff provides no authority for the proposition that she is the legal owner of Porter's cell phone merely because she paid for it.  Indeed, in Pennsylvania, the recipient of a gift can obtain an ownership interest in the property, despite not having paid for it.  *See, e.g.*, *LaFond v. Dep't of Pub. Welfare*, 933 A.2d 159, 162 (Pa. Commw. Ct. 2007).  Moreover, Huff's first argument conflates what is legally sufficient for an officer to charge someone with criminal mischief (probable cause) and what is ultimately required for a conviction of criminal mischief.  Probable cause does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction."  *Reedy,* 615 F.3d at 211 (quoting *Adams,* 407 U.S. at 149).  The test for an arrest without probable cause is an objective one, based on "the facts available to the officers at the moment of arrest."  *Barna,* 42 F.3d at 819 (quoting *Beck,* 379 U.S. at 96).

Huff testified that she threw Porter's phone to the ground because she was upset by messages she read on it.  (Huff Dep. 28:2-19.)  She admits that, once police arrived, she told them that she had broken the phone.  (*Id*. at 44:8-9 ("I told Officer Coyle that I broke that phone").)  Crucially, while Huff claims that she gave Porter money for the phone and paid the bills on the phone[14] (*id*. at 104:14-105:8), she does not contend that she ever told this to the police prior to her arrest.  (Hr'g Tr. 31:16-32:2, 42:20-24.)  Moreover, Schaffer testified that he

---

[13]    The Third Circuit later clarified the *Myers* decision in *Laville*, 480 F.3d at 192.

[14]    Huff testified that although she "paid the bill on that cell phone," the bills were sent to Porter, not her. (Huff Dep. 104:16-105:2.)

confirmed with Porter that the cell phone was his own. (Schaffer Dep. 35:15-17 ("I tried to establish ownership of the phone and car, [Porter] stated both of those items were his.").) Given these undisputed facts available to Coyle and Schaffer at the time of arrest, it was objectively reasonable for them to conclude that the phone Huff broke was Porter's property. Huff's first argument against probable cause accordingly fails.

Huff's second argument centers on state law restrictions—essentially, Huff asserts that Pennsylvania law does not permit police to arrest for summary offenses without a warrant unless the offense was committed in the officer's presence. Huff cites to Pennsylvania Rule of Criminal Procedure 502, which pertains to the institution of proceedings for murder, felonies, and misdemeanors. *See* Pa. R. Crim. P. 502. Huff's argument is better considered under Rule 440, which deals with warrantless arrests for summary offenses:

> When an arrest without a warrant in a summary case is authorized by law, a police officer who exhibits some sign of authority may institute proceedings by such an arrest.

Pa. R. Crim. P. 440. Hence, the Court understands Huff's argument to be that Coyle and Schaffer did not have authority to arrest her without a warrant for criminal mischief unless the arrest was "authorized by law." The Pennsylvania General Assembly has provided such authorization for a discrete number of offenses, including theft and domestic violence. *See* 18 Pa. C.S.A. § 3904 ("A law enforcement officer shall have the same right of arrest without a warrant for any grade of theft as exists or may hereafter exist in the case of the commission of a felony."); 18 Pa. C.S.A. § 2711 ("A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has [committed simple assault, aggravated assault, etc.]"). To the Court's knowledge, no such statutory authorization exists for criminal mischief.

While Huff's argument is well taken, the Court is guided by the Third Circuit's decisions in *Primrose v. Mellott*, 541 F. App'x 177 (3d Cir. 2013) and *United States v. Laville,* 480 F.3d 187 (3d Cir. 2007).  In *Primrose*, the Third Circuit stated:

> [Primrose] contends, under Pennsylvania law, a police officer does not have authority to arrest a person for a "summary offense" that takes place out of the presence of a police officer.  Of course, that is not the test we apply for finding probable cause under the Fourth Amendment when evaluating a false arrest claim.  "A significant body of caselaw makes clear . . . why a Fourth Amendment determination cannot turn on the exigencies of the law of a particular state or territory . . . ."

541 F. App'x at 181 (omissions in original) (citing *Virginia v. Moore,* 553 U.S. 164, 176 (2008); *Laville,* 480 F.3d at 193).  Part of that "significant body of caselaw" cited in *Primrose* is *Laville*, where the Third Circuit made plain that "the validity of an arrest under state law must never be confused or conflated with the Fourth Amendment concept of reasonableness, and that the validity of an arrest under state law is at most a factor that a court may consider in assessing the broader question of probable cause."  480 F.3d at 192.

*Laville* clarified the Third Circuit's earlier decision in *Myers*, explaining "[w]e did *not* hold in *Myers* and, indeed, have never held that an arrest that is unlawful under state or local law is unreasonable *per se* under the Fourth Amendment."  480 F.3d at 192 (emphasis in original).  Rather, the Third Circuit made clear that the "test is one of federal law" and "it is reasonableness that is the central inquiry under the Fourth Amendment."  *Id*. at 193-94.  Under the federal test:

> Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested.

*Id*. at 194; *cf. McMullen v. Maple Shade Twp.*, 643 F.3d 96, 100 n.5 (3d Cir. 2011) ("Many states have enacted laws that afford individuals protections beyond those found in the United States

Constitution.  But arrests made in violation of these state laws are not, in and of themselves, actionable under Section 1983.").

Following *Laville*, courts in this Circuit have recognized that the probable cause required to extinguish a false arrest claim under the Fourth Amendment is a separate inquiry from the procedures an individual state authorizes by statute.  *See Levine v. Rodden*, No. 15-cv-574, 2015 WL 2151781, at *5 (E.D. Pa. May 7, 2015) ("[W]hile Pennsylvania Rule of Criminal Procedure 502 prohibits warrantless arrests for misdemeanors committed outside the presence of the arresting officer, Rule 502 alone does not automatically imply a similar prohibition in the United States Constitution that could become the basis for a Section 1983 claim."); *Milbourne v. Baker*, No. 11-cv-1866, 2012 WL 1889148, at *9 (E.D. Pa. May 23, 2012) ("Plaintiff has conflated Count I and Count II.  She argues that her arrest was an unconstitutional seizure because it violated Pennsylvania's prohibition on warrantless arrests for misdemeanors committed outside the presence of the officer.  The Pennsylvania rule is inapposite to the constitutional question.").

Perhaps the clearest authority contradicting Huff's second argument is the Third Circuit's opinion in *Hughes v. Shestakov*, 76 F. App'x 450, 451 (3d Cir. 2003).  In *Hughes*, the district court was presented with the same argument Huff advances here—that even though probable cause existed for Hughes' arrest for criminal mischief, his Fourth Amendment rights were nevertheless violated because he was arrested without a warrant for a summary offense committed outside the presence of the arresting officers.  76 F. App'x at 451.  Noting the lack of binding precedential authority on this issue, the district court ultimately granted summary judgment for defendants on the basis of qualified immunity because Pennsylvania state law was not clearly established.  *See Hughes v. Shestakov,* No. 00-cv-6054, 2002 WL 1742666, at *2-3 (E.D. Pa. July 22, 2002).  In affirming the district court's holding, the Third Circuit did not reach

the qualified immunity issue because it independently decided that the police officers had probable cause to arrest Hughes. *Hughes*, 76 F. App'x at 452. Regardless of state or local rules, the Third Circuit reasoned that "the Fourth Amendment does not require an arrest warrant for a minor criminal violation." *Id*. at 451 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 341 n.11 (2001)). Because the police officers had probable cause to believe that Hughes had damaged his neighbor's windshield, this was enough to grant summary judgment to the officers on the false arrest claim. *Id.* at 452. Courts in this Circuit have interpreted *Hughes* to mean that "the presence of probable cause is sufficient to defeat a false arrest or false imprisonment claim under Section 1983, even where the arrest was made without a warrant for a misdemeanor or summary offense committed outside the police officers' presence." *Levine*, 2015 WL 2151781, at *5.

Given *Laville*, *Hughes* and their progeny, as well as Supreme Court precedent advocating the divorce of Fourth Amendment probable cause analyses from individual state law requirements, *e.g*., *Moore,* 553 U.S. at 176; *Atwater*, 532 U.S. at 341 n.11, Huff's second argument fails. Whatever the state procedures established by Rule 440 may be, they are not of a constitutional dimension. All that is required by the Fourth Amendment is that Coyle and Schaffer had probable cause to arrest Huff for any offense that could have been charged under the circumstances. *Barna,* 42 F.3d at 819. It is undisputed that Huff admitted to the police that she threw Porter's phone on the night in question, causing it to break. (*See* Pl.'s Stmt. of Facts ¶¶ 9; Huff Dep. 44:8-9.) Thus, even viewing all the facts in a light most favorable to Huff, Coyle and Schaffer had probable cause to believe that Huff committed criminal mischief in violation of 18 Pa. C.S.A. § 3304(a). Defendants' motion for summary judgment is accordingly granted on Huff's false arrest claim under § 1983.

# VI.

Additionally, Coyle and Schaffer are entitled to summary judgment on Huff's false arrest claim on the grounds of qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kelly v. Borough of Carlisle,* 622 F.3d 248, 253 (3d Cir. 2010) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (internal quotation marks omitted).

There is a two-prong test for qualified immunity: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation. *Kelly,* 622 F.3d at 253 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202. "[W]hether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." *Curley v. Klem,* 499 F.3d 199, 211 (3d Cir. 2007).

At the time of Huff's arrest, it was not clearly established that Coyle and Schaffer were violating Huff's constitutional rights by arresting her for a summary offense not committed in their presence, but for which they had probable cause to believe she committed. The United States Supreme Court has yet to definitively rule on the issue, and in fact, the state of Pennsylvania law on the propriety of such arrests remains unclear.[15] *See, e.g., Scattergood v. Billiter,* No. 05-cv-3073, 2012 WL 2327739, at *7 (E.D. Pa. June 19, 2012) (finding an "absence of a Pennsylvania Supreme Court or United States Supreme Court" authority on the issue);

---

[15] At oral argument, Huff's counsel agreed that whether, under the Fourth Amendment, an officer can arrest someone for a summary offense committed outside the officer's presence has not been "definitively decided" by the United States Supreme Court or the Third Circuit Court of Appeals. (Hr'g Tr. 40:11-21.)

*Morales v. Taveras*, No. 05-cv-4032, 2007 WL 172392, at *13 n.23 (E.D. Pa. Jan. 18, 2007)

("Pennsylvania law with respect to the authority to make a warrantless arrest for a summary

offense is far from certain, i.e., it is not 'clearly established.'") (comparing *Commonwealth v.*

*Clark,* 735 A.2d 1248, 1253 (Pa. 1999) *with Commonwealth v. Elliot,* 599 A.2d 1335, 1337-38

(Pa. Super. Ct. 1991)); *cf. Levine*, 2015 WL 2151781, at *7 ("[T]he Supreme Court has yet to

rule on the constitutionality of warrantless arrests for misdemeanors committed outside the

arresting officer's presence").  Courts in this Circuit have held that, in the face of such

uncertainty, police officers are entitled to qualified immunity for false arrest claims premised on

an officer's warrantless arrest for a summary offense not committed in his presence, but based on

probable cause.  *See, e.g., White v. Brommer*, No. 09-cv-04353, 2011 WL 3625020, at *11 (E.D.

Pa. Aug. 17, 2011) ("[E]ven if an 'in the presence' requirement for warrantless arrests of

summary offenses did exist under Pennsylvania law, defendants would be entitled to qualified

immunity on any false arrest claim because it would not be clear to a reasonable officer in their

respective situations that a warrant is required to make an arrest for a summary offense based on

probable cause."), *aff'd*, 488 F. App'x 564 (3d Cir. 2012); *see also Scattergood*, 2012 WL

2327739, at *7 ("[A]t best Plaintiff can establish only that the law is unclear on whether a

municipal officer may make a warrantless arrest for a summary offense that he does not witness,

but for which the officer has reasonable cause to believe a crime has been committed.  The

arresting officers are therefore entitled to immunity.") (citation omitted).  Coyle and Schaffer are

entitled to qualified immunity on Huff's § 1983 false arrest claim.

## VII.

Because the Court grants summary judgment on Huff's federal claim for false arrest and

that federal claim is the sole basis for Huff's assertion of this Court's jurisdiction (Compl. ¶ 1),

the Court will decline to exercise supplemental jurisdiction over Huff's state law claim for malicious prosecution. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction . . . ."). Huff's claim against Coyle and Schaffer for malicious prosecution is therefore dismissed without prejudice.

## VIII.

For the foregoing reasons, Defendants' motion for summary judgment is granted. An appropriate Order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.